Arturo **HERNANDEZ,**
**Petitioner-Appellant,**

v.

Eloy **MONDRAGON, Warden, and**
**Attorney General, State of New**
**Mexico, Respondents-Appellees.**

**No. 86–2258.**

United States Court of Appeals,
Tenth Circuit.

July 28, 1987.

Nicholas J. Noeding of Poole, Tinnin & Martin, P.C., Albuquerque, N.M. (J. Thomas Sullivan, Dallas, Texas, with him on the brief), for petitioner-appellant.

Charles H. Renwick, Asst. Atty. Gen. (Paul Bardacke, Atty. Gen., and Dale S. Morritz, Asst. Atty. Gen., on the brief), Santa Fe, N.M., for respondents-appellees.

Before LOGAN and SETH, Circuit Judges, and BOHANON, District Judge [*].

SETH, Circuit Judge.

This is a habeas corpus proceeding based on an asserted conflict of interest of petitioner's attorney. The United States District Court adopted the findings of the Magistrate to whom the matter had been referred and dismissed the petition. Petitioner Hernandez and a co-defendant, Adol-

---

* Honorable Luther L. Bohanon, United States District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

fo Ramirez, were charged in New Mexico with armed robbery. The co-defendant represented by attorney Luis Juarez entered into a plea agreement and judgment and sentence (five years probation) was entered on February 1, 1982. Mr. Juarez testified that he did not represent the co-defendant after that date. This co-defendant testified against petitioner at petitioner's trial about nine months later.

Petitioner's attorney at trial, Mr. George Graham, had represented him at the preliminary hearing but was thereafter replaced by the Public Defender for a short time, including the time the co-defendant Ramirez entered into the plea agreement. Mr. Graham was again appointed to represent petitioner at trial and did so. Attorney Juarez was apparently in the Public Defender's office during this period. However, the unusual circumstances present in this case arose from the fact that Mr. Juarez and Mr. Graham, together with a third party, entered into a partnership on the first day of petitioner's trial. It is this partnership which is relied on by the petitioner to demonstrate a conflict of interest apparently by joint representation of both the witness Ramirez and petitioner.

The testimony from the state court judge's hearing and that of the Magistrate shows that attorney Juarez did not discuss with the co-defendant at any time what his testimony would be when he was to appear as a witness against petitioner. The two attorneys did not discuss petitioner's case. The only conversation as to Ramirez concerned his whereabouts.

Before the jury was sworn, Mr. Graham, the attorney for the petitioner-defendant, advised the court that the defendant no longer wanted him to be his attorney. The judge held a "hearing," an inquiry, in chambers on what he considered Mr. Graham's motion to be relieved and defendant's pro se motion that a new attorney be appointed. The defendant, Mr. Graham and the attorney for the state were present. The matter was discussed with the defendant participating and he pointed out that Mr. Juarez and Mr. Graham were now partners; that Mr. Juarez had represented Mr. Ramirez, and that the two attorneys "talked it over."

At the conclusion of the pretrial inquiry the state judge concluded after a reference to the fact that the partnership had commenced that morning:

"[B]ut I do not feel that there is any ethical problem. The defendant that Mr. Juarez previously represented, I believe he pled guilty. He is to go and testify today. It's my understanding Mr. Juarez in no way is to participate in this trial. And I can see no problem. He no longer represents the man that's going to testify against this defendant. And I can see no basis for any impropriety in your proceeding on...."

The record indicates that Mr. Graham did not consider that there was a conflict, but brought the matter to the judge's attention because petitioner had stated he no longer wanted Mr. Graham to represent him. The trial then proceeded, petitioner was found guilty and his conviction was affirmed by the state supreme court.

Petitioner brought these proceedings in the federal court and the matter was referred to the United States Magistrate who held an evidentiary hearing with the attorneys and the petitioner testifying.

The Magistrate concluded that the fact the partnership had commenced the day of trial was not enough to show a conflict especially when considered with the testimony of the attorneys that there were no disclosures one to the other; that Mr. Juarez had not talked to the witness Ramirez about the testimony he would give at the petitioner's trial; and his representation of Mr. Ramirez had ended nine or ten months before petitioner's trial.

The Magistrate thus concluded, as had the state trial judge, that there was no conflict of interest. He also concluded that the inquiry made by the state trial judge was adequate. The United States District Judge adopted the findings of the Magistrate.

■ As mentioned, the suggestion of possible conflict and the inquiry by the state judge took place before trial. The issue reaches us under the opinion in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426. In our view the requirements therein laid down were fol-

lowed, and the conclusions reached by the United States District Court were correct. With the adequacy of the state inquiry determined, and the conclusion of no conflict, no issue remained.

The petitioner however urges that under *Holloway* there is to be automatic replacement of the defendant's attorney when the suggestion of a conflict is made. We do not so read *Holloway;* instead, it lays down the several steps described above. These required steps were here followed.

This is also in accord with *United States v. Davis,* 766 F.2d 1452 (10th Cir.), and *United States v. Newman,* 733 F.2d 1395 (10th Cir.), where we considered multiple representation. *See also United States v. Geittmann,* 733 F.2d 1419 (10th Cir.). *United States v. Winkle,* 722 F.2d 605 (10th Cir.), relied on by petitioner, is not to the contrary. There the same attorney represented both defendants. As mentioned, in the case before us there was nothing advanced to demonstrate a conflict except the formation of the partnership on the day of trial. This was not significant in view of both the timing and the testimony as to an absence of disclosures or discussion of the cases as mentioned.

The Supreme Court has again considered "multiple" representation in *Burger v. Kemp,* ___ U.S. ___, 107 S.Ct. 3114, 97 L.Ed.2d 638, a death sentence case. The Court was sharply divided, but the opinion for the Court in part said:

"There is certainly much substance to petitioner's argument that the appointment of two partners to represent coindictees in their respective trials creates a possible conflict of interest that could prejudice either or both clients. Moreover, the risk of prejudice is increased when the two lawyers cooperate with one another in the planning and conduct of trial strategy, as Leaphart and his partner did. Assuming without deciding that two law partners are considered as one attorney, it is settled that '[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel.' *Holloway v. Arkansas,* 435 U.S. 475, 482 [98 S.Ct. 1173,

1178, 55 L.Ed.2d 426 (1978). We have never held that the possibility of prejudice that 'inheres in almost every instance of multiple representation' justifies the adoption of an inflexible rule that would presume prejudice in all such cases. See *Cuyler v. Sullivan,* 446 U.S. 335, 348, [100 S.Ct. 1708, 1718, 64 L.Ed.2d 333] (1980). Instead, we presume prejudice 'only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."' *Strickland [v. Washington],* 466 U.S. [668], at 692 [104 S.Ct. 2052 at 2067, 80 L.Ed.2d 674] (citation omitted). See also *Cuyler,* 446 U.S., at 348, 350 [100 S.Ct. at 1718, 1719]."

The representation of petitioner at trial was well within the requirements of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and our decisions.

As mentioned at the outset the United States District Judge in his order stated that he had made "a de novo determination of those portions of the Magistrate's findings and recommendations objected to."

AFFIRMED.